# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-KA-00271-SCT

*SHARLET BELTON COLLINS*

*v.*

*CITY OF HAZLEHURST, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/23/95 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CARROLL RHODES |
| ATTORNEY FOR APPELLEE: | EDWARD E. PATTEN, JR. |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 12/22/97 |
| MOTION FOR REHEARING FILED: | 12/29/97 |
| MANDATE ISSUED: | 3/31/98 |

**BEFORE DAN LEE, C.J., PITTMAN AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This criminal appeal is brought before this Court from the Circuit Court of Copiah County, Mississippi, by Sharlet Belton Collins (Collins), who was convicted of violating a municipal ordinance of the City of Hazlehurst, Mississippi (City). This ordinance prohibited on-premises beer permit holders from allowing persons under the age of twenty-one (21) years to enter their establishments where beer is consumed.

¶2. The case was commenced on October 22, 1994, when Charles Smith, a police officer for the City filed a criminal affidavit against Collins. This affidavit charged Collins with violating the municipal ordinance. A trial was held in Municipal Court of Hazlehurst, Mississippi. By Order dated December 12, 1994, Collins was found guilty of violating the ordinance. On January 17, 1995, Collins filed her appeal of the decision to the Circuit Court of Copiah County.

¶3. On February 16, 1995, Collins filed her Motion to Dismiss, asserting the ordinance was invalid because it made conduct that is permissible under state law a misdemeanor. The Motion was overruled. On February 17, 1995, a jury trial was had in the Circuit Court of Copiah County, where

Collins was found guilty of violating the ordinance.

¶4. At the conclusion of the City's case-in-chief, Collins moved for a directed verdict. The court overruled the motion. Collins requested a peremptory instruction after all of the testimony, but was refused by the court below. The jury returned a verdict of guilty. On February 23, 1995, the court sentenced Collins to serve thirty days in the county jail, suspended on two years good behavior probation, to pay a fine in the sum of $250 and court costs in the amount of $81. Collins filed a Motion for a New Trial or Judgment of Acquittal on February 27, 1995. The Motion was denied by the trial court on March 3, 1995.

¶5. Aggrieved by the decision of the lower court, Collins filed her appeal to this Court on March 10, 1995. She raises the following issues on appeal:

> **I. WHETHER THE CITY'S ORDINANCE CONFLICTS WITH A STATE STATUTE, THEREBY MAKING THE ORDINANCE VOID.**
>
> **II. WHETHER THE CONVICTION OF COLLINS WAS AGAINST THE OVERWHELMING WEIGHT AND SUFFICIENCY OF THE EVIDENCE.**

### STATEMENT OF THE FACTS

¶6. Collins is the holder of an on-premises retail beer permit that allows the sale of beer by the can to people twenty-one years of age or older. She owns a restaurant and lounge in the City named Club O'Hara. It is worth mentioning that before patrons may enter the Club they are checked with a scanner for weapons. The City has an ordinance that prohibits individuals under twenty-one years of age from being inside a premises licensed to sell beer, where beer is allowed to be consumed. Collins testified that she was the holder of the permit, responsible for making sure the Club was run properly, responsible for hiring the people that check I.D.'s and provide security, and for telling her employees to check a person's I.D. if there was any question about the person.

¶7. On October 22, 1994, a band named "Bones" was playing at the Club. Lakeith Brown, who was eighteen years of age at the time, entered the Club at approximately 8:30 p.m. with his cousin, Antonio Jordan, who was over twenty-one. There was a security guard checking for weapons with a scanner. He was supposed to check for the safety of customers and identification. The security guard used the scanner to check Lakeith for weapons, but did not check his I.D. Lakeith paid $10 for entry into the Club and was not questioned concerning his age.

¶8. The security guards were instructed to check patrons' identification, unless they knew the person entering the Club was over twenty-one. The Club had over one hundred patrons on this particular night. Collins testified that there were signs on the walls of the lobby to inform patrons they must be twenty-one years of age to enter the Club, and they must show identification upon entering. Lakeith stated that he was not paying attention to any signs when he entered the Club.

¶9. Lakeith entered the Club and proceeded to the dance floor. He stayed on the dance floor for about thirty minutes, and then went to the only bathroom in the building. Although Lakeith stated that he only place he saw people consuming beer was the bar, he had to pass through the bar area of the Club to get to the bathroom. As he left the bathroom, Lakeith was pulled to the side by Charles

Smith, a police officer for the City of Hazlehurst, and asked to produce his I.D. It was at this time that Officer Smith learned Lakeith was eighteen years of age.

¶10. Officer Smith then charged Collins with violating the ordinance which makes it a misdemeanor to allow anyone under the age of 21 years in a business that has an on-premises retail beer permit regardless of whether the minor is accompanied by a parent or guardian or under other proper supervision. She was found guilty by the lower court, and this appeal followed.

## DISCUSSION OF THE ISSUES

### I. WHETHER THE CITY'S ORDINANCE CONFLICTS WITH A STATE STATUTE, THEREBY MAKING THE ORDINANCE VOID.

¶11. The main point of Collins' argument on appeal is that the municipal ordinance under which she was convicted is void because it, in effect, nullifies Miss. Code Ann. § 67-3-53(e), by making conduct lawful under the statute illegal under the ordinance. At the end of Prohibition, the Twenty-First Amendment was ratified repealing the Eighteenth Amendment, which had outlawed intoxicating liquors in the United States. The Twenty-First Amendment basically restored rights to states to regulate the manufacture, sale, and consumption of alcoholic beverages. *State Board of Equalization v. Young's Market Co.*, 299 U.S. 59 (1936), *reh. denied*, 299 U.S. 623.

¶12. The Mississippi Legislature enacted laws legalizing the manufacture, sale, and consumption within this state of light wines and beer of an alcoholic content of not more than four percentum by weight, specifically called the **Sale of Light Wine, Beer, and Other Alcoholic Beverages Act**. Miss. Code Ann. § 67-3-1, *et. seq*. The Act permitted but regulated the sale of beer in Mississippi. *Hayes v. State*, 69 So. 2d 845 (Miss. 1954). The citizens of Hazlehurst had previously voted, pursuant to Miss. Code Ann. § 67-3-9, for the City to allow on-premises sale and consumption of beer.

¶13. The legislature noted certain interests of local governments in regulating the sale of alcoholic beverages of this nature and granted specific powers to them, including municipalities. Miss. Code Ann. § 67-3-65 provides, " [m]unicipalities may enforce such proper rules and regulations for fixing zones and territories, prescribing hours of opening and of closing, and for *such other measures as will promote public health, morals, and safety, as they may by ordinance provide*. . . ." (emphasis added). The City, using the previously mentioned statute above as a guide, adopted an ordinance making it unlawful to allow any person under the age of twenty-one years of age inside a premises licensed to sell beer, where beer is permitted to be consumed.

¶14. Collins obtained an on-premises retail beer permit allowing her to sell cans and bottles of beer to customers at her Club. Under Miss. Code Ann. § 67-3-53 (e)[1], Collins was allowed to permit minors to enter her Club only if they were "accompanied by parents or guardians, or under proper supervision." The City enacted an ordinance that made it a misdemeanor to allow anyone under twenty-one years of age in an establishment that had an on-premises retail beer permit, regardless of accompaniment by parents, guardians, or other proper supervision. Collins asserts that conduct lawful under state law was made unlawful by the City ordinance.

¶15. Collins correctly notes that this Court has held that a municipality "could not adopt any valid ordinance, the effect of which would be nullification of the State's statutes dealing with the same misdemeanor, such as the possession of beer made legal for personal consumption." *City of Amory v. Yielding*, 34 So. 2d 726, 728 (Miss. 1948). "It is well established that in any conflict between an ordinance and a statute, the latter must prevail." *Watkins v. Navarrette*, 227 So. 2d 853, 855 (Miss. 1969).

¶16. Collins claims that the state statute allowed on-premises retail beer permit holders to allow persons under twenty-one years of age to enter her Club only if accompanied by parents, guardians, or under proper supervision. Miss. Code Ann. § 67-3-53 (e). Collins argues that the City ordinance conflicted with this statute and is therefore void. The ordinance makes it a misdemeanor for any permit holder to allow persons under twenty-one years of age to enter on-premises retailers even if such persons are accompanied by parents, guardians, or under proper supervision.[2] Because this is in conflict with Miss. Code Ann. § 67-3-53(e), Collins asserts the ordinance is void.

¶17. The City responds by stating the ordinance was permissible under Miss. Code Ann. § 67-3-65, under the theory that the ordinance would promote public health, morals, and safety of persons under twenty-one years of age. This Court has spoken before about the special relationship of minors and alcohol. The Court stated:

> Society has a greater interest in protecting the welfare of minors than other groups listed in § 67-3-53 (b), § 67-1-81 and § 67-1-83. Minors comprise a larger segment of society than do the others listed. The future of society is dependent upon the welfare and protection of its youth. Minority is easily determined by the dispenser of intoxicants, e.g. an I.D. can be required.

*Cuevas v. Royal D'Iberville Hotel*, 498 So. 2d 346, 348 (Miss. 1986).

¶18. The City adopted an ordinance for the welfare and protection of its youth. The City states that open consumption of beer in the presence of those under twenty-one years of age on a licensed premises is not promoting the public health, morals and safety of those individuals. In further support of their position the City states the youth today are confronted with drugs, crime, violence and innumerable unsavory influences. Therefore, the City adopted the ordinance as authorized by Miss. Code Ann. § 67-3-65 to remove the influence of open consumption of beer in the presence of minors on licensed premises.

¶19. This Court finds the City correctly adopted its ordinance under the authority of Miss. Code Ann. § 67-3-65. "The police power confers upon the states and local governmental units broad regulatory authority over public health, welfare, and morals." *Davidson v. City of Clinton, Mississippi*, 826 F.2d 1430, 1433 (5th Cir. 1987).

¶20. The most recent case in which the Court dealt with municipal ordinances was *Maynard v. City of Tupelo, Mississippi*, 691 So. 2d 385 (Miss. 1997). Where the legislature had not clearly expressed an intent, the Court stated, "the public policy considerations in favor of granting a municipality the right to prevent accidents and deaths related to drunken driving, alcohol related altercations, and similar societal ills are so strongly in favor of Tupelo that this Court will allow the ordinance to stand." *Id.* at 388. The Court concluded that the Legislature had not preempted the entire area of alcohol regulation with its extensive regulation by the statutes. *Id.* The Court found that the

Legislature understood the importance of granting local governments the power to regulate the impact of alcoholic beverages within their communities. *Id.*

*¶21.* As mentioned earlier in *Cuevas*, this Court gives special consideration to minors. There the Court stated "[t]he future of society is dependent upon the welfare and protection of its youth." *Cuevas*, 498 So. 2d at 348. The ordinance that this Court upheld in *Maynard* had as its objective the promotion of the public safety and welfare of Tupelo. *Maynard*, 691 So 2d at 388 . Likewise, the City in the case sub judice enacted the ordinance in order to promote the welfare, morals, and safety of its citizenry under the age of twenty-one. It goes without saying that such an ordinance is needed to prevent persons under the age of twenty-one from entering such premises as Club O'Hara, where patrons are scanned for weapons prior to entering.

¶22. Because this Court has distinguished its treatment of minors, we hold that the ordinance adopted by the City was valid under Miss. Code Ann. § 67-3-65. Therefore, the decision of the lower court is affirmed.

## II. WHETHER THE CONVICTION OF COLLINS WAS AGAINST THE OVERWHELMING WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

¶23. When reviewing the sufficiency of the evidence, this Court must view the evidence in the light most consistent with the verdict and give the State all favorable inferences which may be drawn from the evidence. *Corley v. State*, 584 So. 2d 769, 773 (Miss. 1991).

¶24. Collins was charged by the City with wilfully and unlawfully allowing Lakeith Brown, a person under the age of twenty-one years, in Club O'Hara on October 22, 1994. Collins states the evidence proved she was not present when Lakeith entered the Club. She testified that she did not have any intent to allow someone in the Club under the age of twenty-one that night. Collins asserts that a security guard allowed Lakeith to enter the Club, not her.

¶25. Collins argues that the City is holding her guilty for the conduct of her hired security guards when they failed to check Lakeith for proper ID on October 22, 1994. Collins recognizes in Mississippi "[i]n misdemeanors, all who aid, incite, participate or abet the commission of such crime as well as those who perpetrate same are guilty as principals." *State v. LaBella*, 232 So. 2d 354, 355 (Miss. 1970). Collins even states that under *LaBella*, "[i]t is not necessary that [a person] be present at the commission of the crime." *Id.*

¶26. Lastly, Collins argues that she should not be found criminally liable for negligently training her security guards. She states that she could not be found guilty of negligent training or supervision of her employees when the ordinance under which she was charged required her to possess a criminal intent. Collins asserts that in order to sustain the conviction, the City had to prove that she possessed either actual intent or constructive intent. *City of Jackson v. Gordon*, 80 So. 785, 785 (Miss. 1919).

¶27. "Under the common law, proof of criminal intent is a necessary element in the prosecution of every criminal case, (except those offenses which are merely malum prohibitum)." *Lee v. State*, 146 So. 2d 736, 738 (Miss. 1962). This Court has stated that intent to commit a crime is not required, but rather the mere intent to commit the act is sufficient where certain acts have been enumerated unlawful by statute.

Although it may be said that intent is a necessary element of all crimes, this does not necessarily connote conscious wrongdoing. There are statutory crimes in which the law categorically forbids certain acts without regard to the state of mind of the actor. In that instance the intent to do the act is only element necessary to complete the offense. The Legislature may define a crime which depends on no mental element and consists only of forbidden acts or omissions.

*Boone v. State*, 291 So. 2d 182, 186 (Miss. 1974) (internal citations omitted).

¶28. This Court has said that the "intent to do the forbidden act is the only intent necessary to complete the offense." *Roberson v. State*, 501 So. 2d 398, 401 (Miss. 1987). This Court allows statutes to classify conduct as unlawful, and the same can be said for ordinances. In the case sub judice the ordinance made it unlawful to allow any person under the age of twenty-one years inside a premises licensed to sell beer where beer is permitted to be consumed. Lakeith was allowed to enter into the premises by one of the security guards at the Club.

¶29. As Collins concedes, all who aid, incite, participate or abet in the commission of a misdemeanor are guilty as principles. *LaBella*, 232 So. 2d at 355. Collins was charged by the City as a principle in the offense in question because she was the permit holder of an establishment that sold beer at retail and allowed persons under twenty-one years of age to be present where beer was consumed.

¶30. Collins culpability is established by the following excerpts from her cross-examination testimony at trial.

> Q. Now who holds the retail permit to sell beer for the Club O'Hara?
>
> A. Myself.
>
> Q. And who is responsible for making sure that the Club O'Hara is run properly?
>
> A. Myself.
>
> Q. And who is responsible for hiring the people that check the I.D.s and provide the security?
>
> A. Myself.
>
> Q. And who is - - was responsible for telling those people that if you have a question about this person, check his I.D.?
>
> A. Myself.

¶31. Collins further stated on cross-examination that every patron did not have to be checked for proper identification.

> Q. And the fact that he got by was because of your instructions and your instructions as the owner of the permit, the owner of the Club, the instructions you gave your personnel, if you don't think he looks twenty-one - - I mean, if you think he looks twenty-one or older, it's okay.
>
> A. Not saying it so bluntly. I'm saying every single person that comes through the door, if you know that they are twenty-one or older, you don't have to, you know, bother to identify them

by asking for their I.D. So, I try to take the proper channel for keeping this - - this under - - this under twenty-one age limit at a minimum. Had I known that my security guard would have taken the wrong judgment that night, I don't know if I could have avoided it, but if it wasn't him, it could have been someone else. It could have been just for say you or me - - me or someone else thinking well she don't look, ah, twenty-one and ask her for an I.D., but on the other hand, I don't think I need to ask her for an I.D. because she looks twenty-one. But you can't - - you can't go on a guess always. *But, you know, you don't want to - - if you - - and, you know, more or less say got a lobby full of people and you're trying to be impartial to everybody, you don't just want to single out every single person. I mean, he can. He did what he was told to do.* But, you know, next time he- - he just judges for himself.

(emphasis added).

¶32. In *Cuevas*, this Court stated that "[m]inority was easily determined by the dispenser of intoxicants." *Cuevas*, 498 So. 2d at 348. The ordinance stated that no one under twenty-one years of age was permitted in an establishment that had an on-premises retail beer permit, where beer was consumed. Had Collins required all of her patrons to be checked for proper identification prior to their entering her Club, she could have prevented this violation of the ordinance. It is inconceivable to this Court why Collins would have required all of her patrons to be scanned for weapons, but not checked for proper identification.

¶33. It is clear from the record before this Court that the acts of Collins allowed Lakeith Brown to enter Club O'Hara on October 22, 1994. This Court has stated it will not order a new trial unless the verdict is so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice. *Corley*, 584 So. 2d at 773. Given the evidence in the record presented to the lower court and on appeal before this Court, we hold that the verdict was legitimate. Therefore, the lower court verdict should stand and is affirmed by this Court.

## CONCLUSION

¶34. The ordinance adopted by the City prohibiting persons under twenty-one years of age to enter establishments with on-premises beer permits, where beer was consumed, was permissible under Miss. Code Ann. § 67-3-65. This ordinance was not in conflict with Miss. Code Ann. § 67-3-53(e), because it promoted the public health, morals and safety of citizens under the age of twenty-one. This Court has previously recognized the importance of protecting its youth from the ills of society. Therefore, the ordinance adopted by the City was valid and enforceable.

¶35. By her own testimony at trial, Collins proved she had the required intent to violate the City ordinance by telling her employees to check only those patrons who they thought were under twenty-one. This Court has previously stated that minority is easily determined by checking each patron for proper identification as a requisite to entering the premises. The guards checked each patron for weapons. How difficult would it have been to have checked the patrons' identification? The verdict was supported by the evidence before this Court on appeal. Thus, the lower court is affirmed.

¶36. **CONVICTION OF ALLOWING MINORS IN CLUB O'HARA AND SENTENCE OF THIRTY (30) DAYS IN THE COUNTY JAIL, SUSPENDED ON TWO YEARS GOOD BEHAVIOR PROBATION, AND PAYMENT OF A FINE AND COURT COSTS**

**AFFIRMED.**

**LEE, C.J., SULLIVAN, P.J., PITTMAN, SMITH AND MILLS, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, P.J., AND McRAE, J.**

**BANKS, JUSTICE, DISSENTING:**

¶37. As salutary as the Hazlehurst ordinance may seem, it nevertheless contravenes state law concerning the sale of alcoholic beverages. Under the guides of protecting minors the majority sanctions an ordinance which in fact governs the conduct of their parents. I am compelled therefore to dissent.

¶38. Our legislature made a considered choice in allowing the purveyors of alcohol to do so in the presence of minors where the minors are "accompanied by parents, guardians, or proper supervision." Miss. Code Ann. § 67-3-53(e). The Hazlehurst ordinance proscribes the admittance of minors to premises where there is sale of alcoholic beverages regardless of whether such minors are accompanied as specified in the statute. Unlike the ordinance involved in *Maynard v. Tupelo*, I view the Hazlehurst ordinance as in clear contravention of the state statute. The statute here involved was obviously designed to permit families to gather in restaurants and the like where the sale of alcoholic beverages is permitted but where such minors that are present are under parental or equivalent adult supervision. The Hazlehurst ordinance admits to no such construction. The effect then, it restricts the choices of families to dine or engage in other activities together to places which do not sell alcohol. This is an unwarranted intrusion into prerogative of parents and guardians. It is just such intrusion that the legislature sought to prevent.

¶39. That is not to say, however, that the facts of this case dictate acquittal. In my view, a twenty-one year old cousin does not necessarily meet the statutory definition of "proper supervision" such that a minor should be permitted to enter. I would reverse the judgment of the trial court and remand this matter for a new trial wherein the determinative issue would be whether the minor in question was accompanied by "proper supervision" under the statute.

**PRATHER, P.J., AND McRAE, J., JOIN THIS OPINION.**

1. Miss. Code Ann. § 67-3-53(e)provides:

> . . .[I]t shall be unlawful for the holder of a permit authorizing the sale of beer or light wine at retail:

> (e) To permit persons of ill repute, known criminals, prostitutes or minors to frequent his licensed premises, *except minors accompanied by parents or guardians, or under proper supervision*.

(emphasis added).

2. The text of the challenged ordinance was not submitted in evidence in this case. However, the parties stipulated in Municipal Court and argued in Circuit Court that the ordinance makes it a misdemeanor offense for a permit holder to allow persons under twenty-one years of age on the premises where beer is sold or consumed.